IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JERMAIN KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3213 |
| | ) | |
| SHERIFF OF SCHUYLER COUNTY | ) | |
| DON L. SCHIEFERDECKER; | ) | |
| DEPUTY SHERIFF THOMAS | ) | |
| KANOSKI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This cause is before the Court on the Motion for Partial Summary
Judgment (Motion) (d/e 101) filed by Defendants Don L. Schieferdecker,
Sheriff of Schuyler County, and Thomas Kanoski, Deputy Sheriff
(collectively referred to as the Schuyler County Defendants).   For the
reasons that follow, the Motion is GRANTED.

## I. INTRODUCTION

Beginning in May 2006, Plaintiff Jermain King worked as a
Security Therapy Aid at the Illinois Department of Human Services'

(IDHS) Rushville Sexually Violent Person's Treatment and Detention Facility (Facility). Plaintiff alleges he spoke out about the disparity in treatment of African American staff by IDHS and also submitted numerous written complaints. Plaintiff alleges IDHS and IDHS employees conspired to retaliate against him in various ways, which ultimately led to his discharge. As is relevant to the Schuyler County Defendants, Plaintiff alleges that certain IDHS employees falsely reported to the Schuyler County Sheriff's Department that Plaintiff was bringing drugs into the Facility. Plaintiff contends Sheriff Schieferdecker and Deputy Kanoski thereafter subjected him to an illegal full body strip search.[1]

In May 2009, Plaintiff filed an eight-count Verified First Amended Complaint against the Schuyler County Defendants, IDHS, and 20 IDHS employees, pursuant to Title VII of the Civil Rights Act of 1964,

---

[1] Although Plaintiff alleges in Count IV that he was subjected to a "full body and body cavity search," his deposition testimony indicates he was told to remove his clothing, squat, and cough. No one touched him. The term "strip search" refers to the visual inspection of a naked person "without intrusion into the person's body cavities." Peckham v. Wisconsin Dep't of Corrections, 141 F.3d 694, 695 (7th Cir.1998). Therefore, this Court will refer to the search as a "strip search."

42 U.S.C. § 2000e-3, 42 U.S.C. §1983, and state law.  Following a motion to dismiss, two claims remain against the Schuyler County Defendants: (1) Count IV, which alleges the Schuyler County Defendants violated Plaintiff's Fourth Amendment rights by conducting a strip search of Plaintiff when he was arrested on an outstanding arrest warrant; and (2) Count VIII, a § 1983 municipal liability "Monell" claim against the Sheriff's Office and Sheriff Schieferdecker for liability for the illegal strip search.  See  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978) (a local government is responsible under § 1983 "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible").

The Schuyler County Defendants now move for summary judgment on Count IV of the Amended Complaint.  The Schuyler County Defendants assert: (1) Sheriff Schieferdecker was not present when Plaintiff was searched at the Schuyler County Jail and had no personal involvement in the alleged constitutional violation; (2) Deputy Kanoski

had an individualized reasonable suspicion that Plaintiff was carrying

contraband at the time he was arrested and searched; and (3) Deputy

Kanoski is entitled to qualified immunity.

## II.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's  claims

are based on federal law.  <u>See</u> 28 U.S.C. § 1331 ("The district courts shall

have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States").  Venue is proper

because the events giving rise to the claim occurred in Schuyler County,

Illinois.  <u>See</u> 28 U.S.C. § 1391(b) (a civil action where jurisdiction is not

founded solely on diversity of citizenship may be brought in a judicial

district where a substantial part of the events or omissions giving rise to

the claim occurred).

## III.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Fed.R.Civ.P. 56(c). A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997). Facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn for the non-movant. See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).

## IV. FACTS PERTAINING TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Plaintiff's Objections to the Statement of Undisputed Facts

Plaintiff objects to or challenges a number of the Schuyler County Defendants' Statement of Undisputed Facts. One of the objections is that the cited source of the facts was not an affidavit as required by 28 U.S.C. § 1746 and Rule 56(e) of the Rules of Civil Procedure. However, on May 18, 2011, this Court entered a text order denying Plaintiff's motion to strike the affidavits on this basis. Therefore, those objections

are overruled.

Plaintiff also attempts to incorporate by reference portions of his Complaint and certain unidentified exhibits thereto as additional facts in support of his Memorandum in Opposition to the Motion for Summary Judgment. On May 18, 2011, the Court denied Plaintiff's request to stand on his Complaint and be excused from filing a Statement of Additional Facts as part of his response to the IDHS Defendants' Motion for Summary Judgment. This Court noted "there is no reason why Plaintiff cannot comprehensively set forth all materials relating to his response in one single pleading." The same reasoning applies here.

Finally, Plaintiff disputes the facts set forth by the Schuyler County Defendants regarding the information Sheriff Schieferdecker received prior to the traffic stop. Plaintiff's objection centers primarily on alleged differences between Sheriff Schieferdecker's Affidavit in support of the Motion as compared to his Answer to the Amended Complaint and responses to Interrogatories. For example, in his Affidavit, Sheriff Schieferdecker asserted that both Larry Phillips and Chris Clayton of

IDHS contacted him and told him that several IDHS employees had informed them that Plaintiff was bringing cannabis into the Facility. Sheriff Schieferdecker's Interrogatory answer only identified Clayton and stated Clayton told Sheriff Schieferdecker that he obtained the information from several sources, including several inmates. On a motion for summary judgment, "[a]ny discrepancies in the factual record should be evaluated in the nonmovant's favor." Ledbetter v. Emery, 20099 WL 1871922, at *1 (C. D. Ill. 2009). Therefore, the facts pertaining to the information Sheriff Schieferdecker received prior to the traffic stop will be based on Sheriff Schieferdecker's Answer to the Complaint and the responses to Interrogatories. This Court also considers Clayton's Affidavit, which Plaintiff attached to his response to the Motion.

## B.    The Relevant Facts

Prior to December 4, 2007, Sheriff Schieferdecker received information about Plaintiff from Chris Clayton, the Internal Security

Investigator at the Facility.[2]  Clayton told Sheriff Schieferdecker that

Plaintiff had an outstanding arrest warrant from McDonough County

and that several sources had advised Clayton that Plaintiff was

transporting cannabis into the Facility.  According to Sheriff

Schieferdecker:

> Chris Clayton at IDHS contacted me at the
> sheriff's office in regard to information he had
> received regarding [Plaintiff] transporting cannabis
> into the facility.  Mr. Clayton advised that he had
> obtained this information from several sources,
> including inmates at the facility.  Mr. Clayton also
> advised that [Plaintiff] was scheduled to work on
> December 4, 2007[,] and at what time, the license
> plate number of the vehicle in which he would be
> traveling to work, and the expected route to the
> facility.  Myself and Dep. Kanoski waited en route
> for the vehicle and once it was located initiated a
> traffic stop and verified that [Plaintiff] was the
> male passenger of the car.

In his Affidavit, Clayton stated that in October 2007, he had

_____

[2]  In his Affidavit, Clayton states that, as an Internal Security Investigator, he was responsible for investigating unusual incidents, suspected violations of criminal law, and violations of rules alleged to have occurred by residents and staff.  Clayton also stated that since 1995 he was employed as a Deputy in the Schuyler County Sheriff's Department and was "currently available to the Sheriff's Department on an as needed basis."

received information from a "credible informant that [Plaintiff] had made comments that he could and would bring drugs into the facility." The informant had "previously provided credible information in a previous drug trafficking case involving an employee." Clayton provided the confidential source with access to call Internal Affairs through a confidential number.

In light of the information that Plaintiff had an outstanding arrest warrant, Sheriff Schieferdecker directed Deputy Kanoski to initiate the traffic stop and arrest Plaintiff based on that warrant. In his Affidavit, Deputy Kanoski stated that Sheriff Schieferdecker told Kanoski that he had received a tip that Plaintiff was smuggling cannabis into the Facility. On December 4, 2007, Deputy Kanoski stopped a vehicle in which Plaintiff was a passenger and on his way to work. Sheriff Schieferdecker assisted in the investigatory stop of the vehicle.

During the traffic stop, Deputy Kanoski conducted a pat down of Plaintiff and arrested Plaintiff on the outstanding arrest warrant. Deputy Kanoski transported Plaintiff to the Schuyler County Jail (Jail). Sheriff

Schieferdecker searched the vehicle after obtaining consent from the female driver.  Plaintiff did not contest the arrest warrant's validity. [3]

After arriving at the Jail, Plaintiff was booked and processed by Schuyler County Jail Administrator Steven Campbell.  Campbell searched Plaintiff in Kanoski's presence.  The search was conducted in a private room with the door closed.  No female officers were present.  Plaintiff was required to disrobe, squat, and cough.  Campbell also searched Plaintiff's clothes and shoes after they were removed.  Neither Campbell nor Kanoski touched Plaintiff anytime during the search.  The search took two to three minutes.  Kanoski told Plaintiff he was being searched because IDHS had provided the Sheriff's Department with information that Plaintiff was trafficking cannabis into an IDHS facility.   Sheriff Schieferdecker stated in his Affidavit that he knew Plaintiff needed to be at his job that afternoon.  Therefore, he instructed Campbell to "allow Plaintiff to put on his street clothes after he was booked, processed[,] and

---

[3] Plaintiff testified that the warrant for his arrest arose out of a traffic case in Macomb, Illinois, due to his failure to appear.

searched and to allow Plaintiff to wait outside the cell area, so that he could make it to his job on time if he posted bond." After Plaintiff's bond was paid, Plaintiff was released from the Jail.

## V. ANALYSIS

The Schuyler County Defendants assert they are entitled to summary judgment on Count IV because: (1) Sheriff Schieferdecker was not present when Plaintiff was searched at the Jail and had no personal involvement in the alleged constitutional violation; (2) Deputy Kanoski had an individualized reasonable suspicion that Plaintiff was carrying contraband at the time he was arrested and searched; and (3) Deputy Kanoski is entitled to qualified immunity. Plaintiff responds that the Schuyler County Defendants are not entitled to summary judgment because: (1) the Affidavits in support of their Statement of Material Facts do not comply with 28 U.S.C. § 1746 and Fed. R. Civ. P. 56(e); (2) the memorandum of law fails to point out which particular set of facts and documentary evidence in the record warrant summary judgment in their favor; and (3) the Schuyler County Defendants failed to develop a legal argument.

This Court has already denied Plaintiff's Motion to Strike the Affidavits.  <u>See</u> Text Order dated May 18, 2011.  This Court found the Affidavits satisfied the relevant statute.   As for Plaintiff's remaining arguments, the Schuyler County Defendants point to specific facts in support of their motion and provide legal argument with citation to relevant legal authority as required by Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(D)(1).  Therefore, this Court will address the merits of the Motion.

**A.    Sheriff Schieferdecker**

The Schuyler County Defendants argue that Sheriff Schieferdecker is entitled to summary judgment because he was not present when Plaintiff was searched and had no personal involvement in the alleged constitutional violations.  Plaintiff does not respond to this argument.

"Liability under § 1983 must be premised on personal involvement in the deprivation of the constitutional right, not vicarious liability." <u>Payne for Hicks v. Churchich</u>, 161 F.3d 1030, 1042 n. 15 (7th Cir. 1998); <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983) ("An

individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation") (emphasis in original).  However, a defendant need not directly participate in the violation if (1) he "acts or fails to act with a deliberate and reckless disregard of [the] plaintiff's constitutional rights";  or (2) "the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent."  Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); see also Patterson v. Burns, 670 F.Supp.2d 837, 849 (S. D. Ind. 2009).

Here, the evidence, viewed in the light most favorable to Plaintiff, shows a genuine issue of material fact exists whether the alleged constitutional deprivation occurred at the direction of Sheriff Schieferdecker or with his knowledge.  Sheriff Schieferdecker directed Deputy Kanoski to initiate the traffic stop and arrest Plaintiff based on the warrant.  Sheriff Schieferdecker was not present when the strip search occurred, and it is unclear whether he ordered the strip search.  However, Sheriff Schieferdecker directed Kanoski to investigate the tip regarding

narcotics trafficking. In addition, Sheriff Schieferdecker instructed Campbell to "allow Plaintiff to put on his street clothes after he was booked, processed[,] and searched," which suggests he knew Plaintiff would be searched. Because genuine issues of material fact exist regarding Sheriff Schieferdecker's participation in the strip search, summary judgment is inappropriate on this ground. See, e.g., Lessley v. City of Madison, Ind., 654 F.Supp.2d 877, 899-900 (S. D. Ind. 2009) (finding that the officer was personally responsible for strip searches even though he did not perform them where he took the plaintiffs to the fire station, caused another individual to be called to perform the searches, and told the person who performed the searches that the plaintiffs had consented to the searches).

## B. The Undisputed Facts Demonstrate the Schuyler County Defendants Had Reasonable Suspicion

Although issues of material fact exist regarding Sheriff Schieferdecker's personal involvement in the alleged constitutional violation, both he and Deputy Kanoski are entitled to summary judgment on Count IV on the other grounds raised in the Motion. The

undisputed facts, taken in the light most favor to Plaintiff, show that the Schuyler County Defendants had reasonable suspicion that Plaintiff was carrying contraband.

The Fourth Amendment requires that searches be reasonable under the circumstances. See New Jersey v. T.L.O., 469 U.S. 325, 340 (1985)("The fundamental command of the Fourth Amendment is that searches and seizures be reasonable"). Determining reasonableness requires balancing the need for the search against the invasion of private rights. Bell v. Wolfish, 441 U.S. 520, 559 (1979). Moreover, a court must consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.

Plaintiff challenges only the justification for initiating the strip search, not the scope, manner or place of the search. Strip searches of arrestees can be conducted only if there is reasonable suspicion that the arrestee is concealing weapons or contraband. Campbell v. Miller, 499 F.3d 711, 717 (7th Cir. 2007); Mary Beth G. v. City of Chicago, 723

F.2d 1263, (7th Cir. 1983).

In evaluating whether suspicion was reasonable, the Court looks to the totality of the circumstances to determine whether the officer had specific, articulable facts for suspecting legal wrongdoing.  See United States v. Arvizu, 534 U.S. 266, 273 (2002); Thompson v. County of Cook, 428 F.Supp.2d 807, 814 (N.D. Ill. 2006).  To justify their search, the officers must "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  Terry v. Ohio, 392 U.S. 1, 21 (1968); Adrow v. Johnson, 623 F.Supp. 1085, 1089 (C.D. Ill. 1985).

When examining reasonable suspicion, this Court may consider the collective knowledge of the officers involved.  U.S. v. Barnes,  506 F.3d 58, 62-63 (1st Cir. 2007) (examining the collective knowledge of the officers involved in the investigation when determining whether reasonable suspicion existed to conduct a body cavity search);  United States v. Lenoir, 318 F.3d 725, 728 (7th Cir. 2003) ("when law enforcement officers are in communication regarding a suspect . . . the

knowledge of one officer can be imputed to the other officers under the collective knowledge doctrine").  The officers' subjective motivation is irrelevant.  See United States v. Bullock, 632 F.3d 1004, 1012 (7th Cir. 2011).

Reasonable suspicion can be based on an informant's tip if the tip bears a sufficient indicia of reliability.  Adams v. Williams, 407 U.S. 143, 147 (1972) (unverified tip from a reliable informant provided sufficient reasonable suspicion to justify a Terry stop);  United States v. Ganser, 315 F.3d 839, 843 (7th Cir. 2003).  An informant's tip is evaluated based on the totality of the circumstances, which includes the informant's veracity, reliability, and basis of knowledge, and whether the information the informant provided is corroborated by independent investigation. Ganser, 315 F.3d at 843.

In this case, the information known to Clayton, Deputy Schieferdecker, and Deputy Kanoski was individualized and bore an indicia of reliability.  This was not a case involving an anonymous tip. With an anonymous tip, the informant's reputation cannot be assessed,

he cannot be held responsible if the allegation is fabricated, and the basis of the informant's knowledge cannot be discerned. <u>Florida v. J.L.</u>, 529 U.S. 266, 270 (2000); <u>see</u> <u>also</u> <u>United States v. Brown</u>, 366 F.3d 456, 459 (7th Cir. 2004).

As the evidence shows, Clayton received information from a known informant that Plaintiff had made comments that he could and would bring drugs into the Facility. Clayton believed the informant was credible because the informant had provided credible information in the past regarding a drug trafficking case involving another employee of the Facility. A reasonable inference from the evidence is that the informant was an inmate or employee of the Facility, which would indicate the basis for the informant's knowledge. Clayton provided the information to Sheriff Schieferdecker, who in turn provided information to Deputy Kanoski. Deputy Kanoski stopped Plaintiff on the way to work and conducted the strip search after arresting Plaintiff on an outstanding warrant. Under these facts, the Schuyler County Defendants had reasonable suspicion to believe that Plaintiff was hiding contraband and

the strip search did not violate Plaintiff's constitutional rights.

## C.    Qualified Immunity

Even if the facts were not sufficient to support reasonable suspicion,
the Schuyler County Defendants are entitled to qualified immunity.
Qualified immunity protects governmental actors "from liability for civil
damages insofar as their conduct does not violate clearly established
statutory or constitutional rights of which a reasonable person would
have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
Qualified immunity balances the interest of holding "public officials
accountable when they exercise power irresponsibly" with the interest in
shielding officials from "liability when they perform their duties
reasonably."  Pearson v. Callhan, 129 S.Ct. 808, 815 (2009).
"[Q]ualified immunity provides 'ample room for mistaken judgments'
and protects government officers except for the 'plainly incompetent and
those who knowingly violate the law.'"  Saffell v. Crews, 183 F.3d 655,
658 (7th Cir. 1999), quoting Hunter v. Bryant, 502 U.S. 224, 229
(1991).

To determine whether defendants are entitled to qualified immunity, a court must determine: (1) "whether the facts alleged show that the officer's conduct violated the plaintiff's constitutional rights" and (2) "whether the right was clearly established in light of the specific context of the case so that a reasonable official would have understood that his conduct would violate the right."  Patterson v. Burns, 670 F.Supp.2d 837, 847 (S.D. Ind. 2009), citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 129 S. Ct. 808.  The Court may, in its discretion, address the second prong of the test first. Pearson, 129 S.Ct. at 821.

Addressing the second prong of this test, this Court concludes the Schuyler County Defendants are entitled to qualified immunity.  It is clearly established that an arrestee may not be strip searched without reasonable suspicion that the arrestee is hiding contraband.  Campbell, 499 F.3d at 716-18.  However, the Schuyler County Defendants are entitled to qualified immunity if a reasonable officer could have rationally believed that his conduct was constitutional in light of the clearly

established law and the information the officer possessed at the time the incident occurred.  Saffell, 183 F.3d at 658 (finding customs inspector entitled to qualified immunity for strip search at customs checkpoint).

Taking the facts in the light most favorable to Plaintiff, the Schuyler County Defendants acted reasonably in believing that justifiable suspicion existed to strip search Plaintiff after his arrest.  See, e.g., Varrone v. Bilotti, 123 F.3d 75, 79-80 (2d Cir. 1997) (finding it was objectively reasonable for the officer to believe he was acting on the basis of reasonable suspicion).  As noted above, an informant known to Clayton, who had provided credible information before, told Clayton that Plaintiff had made comments that he could and would bring drugs into the Facility.  Sheriff Schieferdecker stated that Clayton told him several sources, including inmates from the facility, had advised Clayton that Plaintiff was transporting cannabis into the facility.  Plaintiff was arrested on his way to work after a search of the vehicle apparently revealed no drugs or cannabis.  Because a reasonable officer could have believed that

his conduct was constitutional in light of the clearly established law and the information known to the Schuyler County Defendants, the Schuyler County Defendants are also entitled to qualified immunity on Count IV.

## VI.  CONCLUSION

For the reasons stated, the Schuyler County Defendant's Motion for Partial Summary Judgment (d/e 101) is GRANTED.  Summary judgment is entered in favor of the Defendant Don L. Schieferdecker and Thomas Kanoski on Count IV of Plaintiff's Verified Amended Complaint.  Defendant Kanoski is DISMISSED from the case.

ENTERED:       July 6, 2011

FOR THE COURT:

                              _____s/Sue E. Myerscough_____
                              SUE E. MYERSCOUGH
                              UNITED STATE DISTRICT JUDGE