## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

JERMAIN KING,                          )
                                       )
    Plaintiff,                    )
                                       )
    v.                            )          No.  08-3213
                                       )
SHERIFF OF SCHUYLER COUNTY             )
DON L. SCHIEFERDECKER, et al.,         )
                                       )
    Defendants.                   )

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S District Judge.

This cause is before the Court on the Motion for Summary

Judgment (d/e 107) filed by the following Defendants: (1) Illinois

Department of Human Services (Department); (2) Tanya Clairmont[1], a

Security Therapy Aide II; (3) Chris Clayton, an Internal Security

Investigator; (4) Joe Dorsey, a Security Therapy Aide IV; (5) Joe

Hankins, a Public Service Administrator and Shift Commander; (6)

Sandra Hays, a Security Therapy Aide IV; (7) Michael Howard, a

---

[1] Tanya Clairmont is now known as Tanya Pool, but this Court will continue to refer to her as Clairmont.

Security Therapy Aide; (8) David Jacobsen, a Security Therapy Aide; (9) John Jeslis, a Security Therapy Aide II; (10) Dave Kunkel , a Security Therapy Aide IV; (11) David Kurfman, a former Security Therapy Aide; (12) Eugene McAdory, Chief of Security (since November 2007) and a Public Service Administrator VI, Shift Commander (May 2006 to November 2007); (13) Darrell Sanders, Chief of Security (until November 2007); (14) Gregg Scott, Security Therapy Aide II (from October 2006 to March 2007) and a Security Therapy Aide IV (from March 2007 to March 2011); (15) Janie Volk[2], a Public Service Administrator, Shift Commander; and (16) Tarry Williams, Security Therapy Aide IV; (the Individual Defendants) (all collectively referred to as the Department Defendants).   For the reasons that follow, the Department Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

## I. OVERVIEW

In July 2008, Plaintiff filed a Complaint against the Department

---

[2] Plaintiff sued Volk as "Colette Volk" but the documents in the record identify her as Janie Volk, as does her own affidavit.

Defendants, as well as additional defendants[3], in the Northern District of Illinois. In September 2008, the case was transferred to this district.

In May 2009, Plaintiff, *pro se*[4], filed a Verified First Amended Complaint (Amended Complaint). Plaintiff, an African American male, worked for the Department at its Rushville Treatment and Detention Facility (Facility). The Facility is a secure facility housing convicted felons who have been released from prison but have been determined by a court to be sexually violent persons.

Plaintiff alleged that he spoke out about the disparity in treatment of African American staff by the Department and filed two complaints

---

[3] Plaintiff also brought claims against Don L Schieferrdecker, the Sheriff of Schuyler County; Deputy Sheriff Thomas Kanoski (the Schuyler County Defendants); as well as additional Department employees, Facility Director Larry Philips, Assistant Facility Director Brian Thomas, Facility Director Thomas Monahan and Director of Forensics Anderson Freeman. In September 2009, the Court dismissed the claims against Philips, Thomas, Monahan, and Freeman. In July 2011, this Court granted summary judgment in favor of the Schuyler County Defendants on Count IV. Count VIII, a § 1983 municipal liability "Monell" claim brought against Sheriff Schieferdecker relating to the allegedly illegal strip search, remains. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978) (a local government is responsible under § 1983 "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible").

[4] Plaintiff was represented by counsel until January 2009.

with the Bureau of Civil Affairs (BCA).  According to Plaintiff, the BCA is the internal investigation agency that investigates corruption and discrimination within state facilities.

Plaintiff alleged the Department Defendants retaliated against him in various ways, ultimately leading to his wrongful discharge. Plaintiff also alleged that certain Department employees falsely reported to the Schuyler County Sheriff's Office that Plaintiff was bringing drugs into the Facility.  According to Plaintiff, the Schuyler County Sheriff and the Deputy Sheriff arrested Plaintiff on an outstanding warrant and subjected him to a full body strip search.

Defendants filed a motion to dismiss.  Following the Court's September 2009 Opinion, the following claims remained against the Department Defendants: (1) Count I, a retaliation claim against the Department under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3; (2) Count III, a § 1983 claim against the Individual Defendants for retaliating against Plaintiff for exercising his First Amendment rights when he spoke out about the treatment of African American employees

at the Facility; (3) Count V, a § 1983 claim against Defendants Scott, Clayton, and Williams for violating Plaintiff's right to equal protection under the Fourteenth Amendment; (4) Count VI, a state law claim against the Individual Defendants for intentional infliction of emotional distress; and (5) Count VII, a state law claim for gross negligence against Defendants Clayton and Sanders.

In April 2011, the Department Defendants filed a Motion for Summary Judgment. In May 2011, Plaintiff filed a memorandum in response. No reply memorandum was filed.

## II. JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff asserted claims based on federal law. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). Venue is proper because the events giving rise to the claim occurred in Schuyler County, Illinois. See 28 U.S.C. § 1391(b) (a civil action where jurisdiction is not founded solely on diversity of citizenship may be brought in a judicial

district where a substantial part of the events or omissions giving rise to the claim occurred).

## III.  LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Fed.R.Civ.P. 56(c).  A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).

The movant bears the burden of establishing that there is no genuine issue of material fact.  Celotex Corp, 477 U.S. at 323.  If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial.  Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 252.

In deciding a motion for summary judgment, a court can only consider sworn statements based on personal knowledge and other evidence that would be admissible at trial under the Federal Rules of Evidence. Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002). The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. Id. However, conclusory allegations do not create issues of fact which forestall summary judgment. See Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 740 (7th Cir. 2006) ("it is . . . axiomatic that a plaintiff's conclusory statements do not create an issue of fact").

## IV. FACTS PERTAINING TO THE MOTION FOR SUMMARY JUDGMENT

### A. Plaintiff's Objections to the Statement of Undisputed Facts

In April 2011, the Department Defendants filed a Statement of

Undisputed Facts in support of the Motion for Summary Judgment. In May 2011, Plaintiff filed a response to the Motion for Summary Judgment and a response to the Statement of Undisputed Facts. Despite seeking and obtaining an extension of time to file a reply to Plaintiff's Response to the Statement of Undisputed Facts, the Department Defendants have not done so.

In his response to the Statement of Undisputed Facts, Plaintiff objects to a number of the "undisputed facts." One of the objections is that the cited source of the facts was not an affidavit as required by 28 U.S.C. § 1746. However, on May 18, 2011, this Court entered a text order denying Plaintiff's motion to strike the affidavits on this basis. Therefore, this objection is overruled.

Plaintiff also objects to numerous facts on the basis that the cited source is not an affidavit as required by Federal Rule of Civil Procedure 56. Rule 56(c)(4) requires that all affidavits "used to support or oppose a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the

affidavit or declarant is competent to testify on the matter stated."
Fed.R.Civ.P. 56(c)(4); see also Luster v. Illinois Department of
Corrections, ___ F.3d ___ n.2, 2011 WL 2857262 (7th Cir. 2011). In
examining the affidavits, this Court will only consider the facts contained
in the affidavits that comply with Rule 56(c)(4).

Plaintiff objects to statements of fact that cite the two documents
attached to the Motion, including an Employee Discipline Log (Exhibit
A), and an April 26, 2007, Memorandum (Exhibit B). These documents
have not been authenticated in any way. Therefore, the Court will not
consider them.

Plaintiff also objects to the documents attached to the Individual
Defendant's affidavits. Those documents include: (1) incident reports,
(2) disciplinary records; (3) pre-disciplinary meeting results; (4) and a
Division of Internal Affairs investigation report prepared by Defendant
Clayton. Plaintiff asserts that the documents do not qualify as business
records under Federal Rule of Evidence 803(6).

A court may only consider admissible evidence when assessing a

motion for summary judgment.  <u>Gunville v. Walker</u>, 583 F.3d 979, 985

(7th Cir. 2009).   The documents to which Plaintiff objects are admissible

for a number of reasons.

First, the documents, with the exception of the Investigation

Report, constitute business records.  Federal Rule of Evidence 803(6)

provides an exception–commonly referred to as the business records

exception–to the hearsay rule for records of regularly conducted activity.

<u>See</u> <u>Collins v. Kibort</u>, 143 F.3d 331, 337 (7th Cir. 1998).   Documents

are admissible as a business record if the party attempting to admit the

evidence demonstrates that the document was  "kept in the course of

regularly conducted business activity, and [that it] was the regular

practice of that business activity to make records, as shown by the

testimony of the custodian or otherwise qualified witness."  <u>Id.</u> (internal

quotation marks and brackets omitted.)  The witness establishing the

foundation need not have personal knowledge of the entries in the

records or be the person who prepared the documents.  <u>Alexian Brothers</u>

<u>Health Providers Ass'n, Inc. v. Humana Health Plan, Inc.</u>, 608 F.Supp.2d

1018, 1023 (N.D. Ill. 2009).   The witness need only have "'knowledge of the procedure under which the records were created." <u>Collins</u>, 143 F.3d at 338.

With the exception of the Investigation Report, the affiants authenticating the remaining documents testified that those documents were true and accurate copies and were  kept in the course of regularly conducted business activity.  The affiants also provided statements from which it can be inferred that it was the regular practice of the Department to make those records.   Therefore, the incident reports, disciplinary records, and presdisciplinary meeting results are admissible.

In addition, all the documents–including the Investigation Report– are admissible to the extent they are not considered for the truth of the matter asserted therein but rather to support the Department Defendants' assertion that they acted in good faith and were not motivated by an improper purpose.  <u>See</u> <u>Traum v. Equitable Life Assurance Society of U.S.</u>, 240 F.Supp.2d 776, 781 (N.D. Ill. 2002) (personnel file was admissible to the extent the file was "cited to show

what information was before defendants or that defendants took certain action as to the claim"); <u>Lee v. Anthony Wayne Services</u>, 2005 WL 1459440, *3 (N.D. Ind. 2005) ("Documents are also not hearsay where they are not tendered to prove the particulars of their contents but to help establish that the defendant was motivated, in good faith, to discharge the plaintiff for reasons other than her sex, race, or disability"). Therefore, Plaintiff's objections to the admissibility of the documents attached to the affidavits, for purposes of summary judgment, are overruled.

## B.    The Relevant Facts

The following facts are taken from the Department Defendants' Statement of Undisputed Facts, Plaintiff's deposition, and Plaintiff's Affidavit, which was a part of his Amended Complaint.

In January 2005, Plaintiff was hired as a Security Therapy Aide in Training and then a Security Therapy Aide I at the Joliet Treatment Detention Facility.  In March 2006, Plaintiff learned that the Sexually Violent Person's Treatment and Detention Center would be moved to

Rushville, Illinois. In May 2006, Plaintiff relocated to Rushville to work at the Facility.

According to Plaintiff's Affidavit, after relocating to Rushville, Plaintiff began to speak out about the disparity of treatment between the African American staff and the Caucasian staff and submitted several written complaints to Defendant Sanders, two other individuals who are not defendants, and the BCA. Plaintiff filed complaints to the BCA in January 2007 and June 2007.

Plaintiff alleged he suffered retaliation as evidenced by certain actions of the Department Defendants. A summary of these events follows.

1.    June 2006 Denial of Promotion

Plaintiff claimed he was denied a promotion to the Security Therapy Aide II position in June 2006 because of his race. He admitted at his deposition, however, that the promotions were automatic step promotions by Central Management Services (CMS), unless the person's disciplinary record was reviewed and it was recommended he not get the

job.  Plaintiff further admitted that the only Caucasians promoted ahead of Plaintiff had greater seniority than Plaintiff.

    2.    <u>September 16, 2006, Incident</u>[5]

On September 16, 2006, Defendant McAdory wrote an incident report asserting that Plaintiff abandoned his post.  Plaintiff was afforded a predisciplinary meeting at which he was allowed to rebut the charge.

Defendant Volk, the hearing officer, found the charges substantiated and recommended a seven-day suspension.  Defendant Sanders concurred with the recommendation.  At his deposition, Plaintiff testified he believed Defendants Volk and Sanders engaged in making false reports against him.

    3.    <u>Actions Relating to Plaintiff's Fall 2006 Promotion</u>

In the Fall of 2006, Plaintiff was promoted to a Security Therapy Aide II due to his seniority.  Plaintiff testified he did not receive the uniform and "chevrons" that would denote he was promoted.  He also claimed he did not receive greater responsibility.  According to Plaintiff's

---

[5] The record refers to this incident by two dates: September 9, 2006, and September 16, 2006.

deposition testimony, Defendant McAdory was responsible for making sure that Plaintiff got his uniform, but Plaintiff admitted McAdory did not know Plaintiff did not get his uniform.

Defendant Dorsey evaluated Plaintiff.  In his affidavit, Defendant Dorsey refers to the evaluation as a December 2006 evaluation. However, the evaluation document to which he refers (Exhibit 8 of Plaintiff's Amended Complaint) is dated February 2007.  In his affidavit, Dorsey stated he rated Plaintiff as "meeting expectations" in four categories but that he "needed improvement" in the remaining six categories.  Dorsey explained his ratings were because of Plaintiff's disciplinary suspensions, issues with uniform compliance, and failing to be on time for shift briefings.  In February 2007, Dorsey recommended Plaintiff be demoted.  Plaintiff was demoted to Security Therapy Aide I, but the record is unclear when this occurred.

4.    Counseling for Misuse of Sick Time

In either October 2006 or September 2007, Defendant Volk counseled Plaintiff for misusing sick time.  Plaintiff denied that he

misused sick time.

### 5. November 11, 2006, Incident

Defendant Dorsey submitted an incident report asserting that Plaintiff was found asleep on post on November 11, 2006. Plaintiff was afforded a predisciplinary meeting at which he was allowed to rebut the charge. The evidence supporting the charge included a camera review report.

Defendant Volk, the hearing officer, found the charges substantiated and recommended a 15-day suspension. Defendant Sanders concurred with the recommendation. In his deposition, Plaintiff admitted that he did not know of any Caucasians accused of sleeping on duty who were treated better than Plaintiff.

### 6. November 24, 2006, Incident

In November 2006, Defendant Jeslis submitted an incident report asserting that Plaintiff violated his perimeter duty on November 24, 2006. According to the Department Defendants, Plaintiff stayed in the Sally Port for nearly four hours and did not do his perimeter patrol. The

first report prepared by Jeslis could not be found, and Defendant Volk told Defendant Jeslis to write another one. Defendant Jeslis was suspended for three days for failing to file a timely report.

Plaintiff testified that Defendant Jeslis submitted a false report. Plaintiff testified he believed Defendant Jeslis' actions were because of Plaintiff's race or for retaliation because the day before Plaintiff's incident, Jeslis allowed a white employee–Security Therapy Aide Drennan (no first name given)–to sit in the control room when it was cold outside. Drennan was not disciplined. In his own affidavit, Defendant Jeslis explained that Drennan was allowed to sit in the control room not because it was cold, but because Jeslis was providing him training.

Plaintiff was afforded a predisciplinary meeting, at which he was allowed to give rebuttal. Defendant Volk, the hearing officer, found the charges substantiated and recommended a 14-day suspension. Defendant Sanders concurred with the recommendation.

7. <u>December 24, 2006, Incident</u>

On December 24, 2006, Plaintiff was accused of being asleep on

duty.  The charge was ultimately reduced to not being alert on duty.

Plaintiff was afforded a predisciplinary hearing.  Plaintiff did not attend the hearing, but a union representative was present on Plaintiff's behalf.  Defendant Volk, the hearing officer, found the charge of not being alert on duty substantiated and recommended a 30-day suspension pending discharge.  Defendant Sanders concurred with the recommendation.

Any discipline over a 30-day suspension must be approved by the Facility Director and CMS.  At some point, Plaintiff's discipline was reduced to a 30-day suspension without discharge.

Plaintiff testified he believed the discipline was based on his race because other individuals had not been alert on duty and nothing was done.  Plaintiff admitted, however, that he did not know of any Caucasians treated better with the same allegations.

8.  January 2007 Grievance Meeting and Filing of BCA Complaint

On January 18, 2007, Plaintiff attended a discrimination grievance meeting with Freeman, Monohan, Thomas, Defendant McAdory, and

Defendant Sanders. On January 19, 2007, Plaintiff submitted a formal complaint with the BCA.

In his deposition, Plaintiff stated the BCA complaint was based on racial disparity and named Defendants Clayton, Dorsey, Hankins, Jeslis, Kunkel, Kurtman, McAdory, Sanders, Scott, Williams, and Volk.

9.    <u>April 25, 2007, Oral Reprimand</u>

On April 25, 2007, Plaintiff received an oral reprimand for allegedly returning back to his duty station late from a scheduled lunch break.

10.    <u>June 2007 BCA Complaint</u>

Plaintiff testified he submitted a second complaint to the BCA in June 2007. Plaintiff based the second complaint on retaliation he suffered after he filed the filing of the first complaint.

11.    <u>The November and December 2007 Investigation Issues</u>

Plaintiff testified that in approximately November 2007, he was placed on another unit. Two residents in that unit informed him of a plot by Clayton. Plaintiff stated that Scott, Williams, and Clayton attempted to persuade residents of the Facility to get Plaintiff to commit

unlawful acts.  To support that statement, Plaintiff attached to his Amended Complaint letters from two Facility residents.  These letters, however, are not sworn or otherwise admissible under 28 U.S.C. § 1746 (affidavits may be executed without oath of given under penalty of perjury);   As such, the letters are not competent evidence and are not admissible on summary judgment.  See, e.g., Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir. 2001) (unsigned, handwritten account was inadmissible hearsay).

On December 4, 2007, the vehicle Plaintiff was riding in to work was pulled over by the Sheriff's Department.  Plaintiff was arrested on an outstanding warrant.  Plaintiff testified that he learned during the course of this case that Defendant Clayton was the individual who telephoned the Sheriff's Office.

Plaintiff testified that he believed he was subjected to these actions (the plot and the arrest) because of his race and in retaliation for his complaints.  He testified that a Caucasian employee was allowed to resign after bringing cigarettes into the Facility and was not subjected to an

investigation.  Plaintiff testified he believed Williams and Scott were involved with Clayton in trying to set up Plaintiff.  Plaintiff also believed that McAdory retaliated against him by letting Clayton–the individual Plaintiff believed was trying to set him up–investigate Plaintiff's incident report alleging that residents were being used to try to get Plaintiff to bring drugs into the Facility.

12.  <u>Incidents that Resulted in Discharge</u>

The February 4, 2008, February 7, 2008, and March 6, 2008, incidents were ultimately considered together and resulted in a 30-day suspension pending discharge.

**a.  February 4, 2008, Incident**

On February 4, 2008, Plaintiff called the Facility and requested a "work-away" day because he had a meeting with BCA in Chicago.  A work-away day is used when an employee is going to be on State business at a facility other than the employee's regular work site.

Plaintiff testified that he also requested he be permitted to take a personal day if his request for a work-away day was denied.  Plaintiff

spoke to Defendant Scott at approximately 9:20 a.m. Plaintiff was scheduled to work at 3:00 p.m.

Defendant Scott wrote an incident report because work-away days are supposed to be requested and approved "well in advance of the day the employee is scheduled to work." Plaintiff admitted his conduct violated the administrative and facility directives.

Plaintiff was afforded a predisciplinary meeting and allowed to rebut the charge. Following the predisciplinary meeting, Defendant Hankins found the charges of providing false information, violation of work-away procedures, conduct unbecoming, and unauthorized absence substantiated based on evidence that (1) Plaintiff did not have an appointment with the BCA; (2) although Plaintiff went to the BCA, he left by 9:00 a.m. but claimed to have been at the BCA office when he called the Facility; (3) he did not provide a time-off slip or proof of the meeting; and (4) he did not following the proper procedures by scheduling the meeting in advance or receiving approval from his supervisor. Defendant Hankins, the hearing officer, found the charges

substantiated.

### b. February 7, 2008, Incident

On February 7, 2008, Defendant Kunkel filed an incident report asserting that Plaintiff was insolent and insubordinate when Plaintiff questioned Kunkel about Kunkel's discipline and criticism of two African American female supervisors in Plaintiff's presence, contrary to policy.

Plaintiff was afforded a predisciplinary hearing and allowed to rebut the charges. Defendant Hankins, the hearing officer, found the charges substantiated.

### c. March 6, 2008, Incident

On March 6, 2008, Plaintiff admittedly failed to report for an overtime shift. Defendant Clairmont wrote the incident report. Plaintiff alleged Defendant Clairmont and Defendant Hays discriminated against him regarding this incident because Plaintiff believed other people should have been written up–but were not– and Clairmont and Hays would be the ones who would have written up the others. Plaintiff also testified

the call log would reflect a number of Caucasians who did not come in for shifts but were not disciplined. He admitted, however, he did not have the names of any Caucasians who did the exact same thing and did not get disciplined.

Plaintiff was afforded a predisciplinary hearing but did not attend because he did not believe he could come onto the grounds. Defendant Hankins, the hearing officer, found the charge substantiated.

13. <u>April 15, 2008, Termination</u>

Defendant Hankins, as the hearing officer, recommended that the discipline for the three incidents be a 30-day suspension pending discharge. On April 15, 2008, Plaintiff was terminated based on the February 4, February 7, and March 6, 2008, incidents.

14. <u>Other Incidents</u>

Plaintiff also complained of additional incidents. Plaintiff testified that on one occasions (no date given), Hankins made a racial reference to African Americans. Specifically, Plaintiff testified Hankins said, "I didn't now that important phone calls came from taxicabs" in reference to

Facility employee Robert Ewa, an African from Nigeria. Ewa also ran a taxi cab company that employed a lots of immigrants from Africa.

Plaintiff also testified about information he received from a Department employee named Sally Hoges, purportedly involving Hankins' refusal to file an incident report that did not contain Plaintiff's name. Plaintiff provides no competent evidence, such as an affidavit of Hoges indicating what Hoges told him.

Regarding similarly situated employees, Plaintiff testified that he believed Hankins treated Caucasian employee, Security Therapy Aide Goddard (no other information provided), better. According to Plaintiff, Goddard was allowed to leave the unit and spy on Plaintiff, and got into a fight outside of the facility and did not receive discipline for it. Plaintiff also testified he did not know what discipline Goddard had received, except that Goddard was brought up on charges by an African American woman and he was not fired. Plaintiff admitted he had no evidence that Hankins was Goddard's hearing officer.

Plaintiff also testified that a Caucasian male who brought cigarettes

into the facility was allowed to resign.  According to Plaintiff, that Caucasian male was not subjected to the an investigation and the police were not called.

Plaintiff also testified that Defendant Kurfman told Plaintiff that Plaintiff was right about African Americans being mistreated at the facility and that he, Kurfman, had sent a few people "over there after Plaintiff."

15. <u>Plaintiff's Testimony Regarding Damages for Intentional Infliction of Emotional Distress Claim</u>

When asked what emotional distress he suffered as a result of the alleged conduct by the Department Defendants, Plaintiff testified he was blind.  Plaintiff explained that he suffered from cataracts before his termination.  Following his termination, he was unable to go to a physician because he had no insurance.   The doctors never told him he had cataracts due to "what's been going on at work."  Plaintiff has never received "any other diagnoses related to what happened here at Rushville."

V.   ANALYSIS

## A. Count I: Title VII Claim Against the Department

In Count I, Plaintiff alleged the Department retaliated against him for speaking out about discrimination within the facility and because of his race. In his deposition, Plaintiff agreed that his retaliation claim was that "everything that happened to [him] after [he] filed that first Bureau of Civil Affairs [complaint] was because [he] filed that."

Although Count I is only entitled a retaliation claim, Defendants' Motion treats some of Plaintiff's claims as discrimination claims. See Hall v. Nalco Co. , 534 F.3d 644, 649 n. 3 (7th Cir. 2008) (explaining that the complaint need not specify the legal theory on which the claim rests; summary judgment is inappropriate where a claim may be cognizable).

Title VII prohibits employers from treating an employee differently on the basis of certain characteristics, including the employee's race. See 42 U.S.C. § 2000e-2(a)(1). In addition, Title VII prohibits an employer from retaliating against an employee who has complained of unlawful practices. See 42 U.S.C. §2000e-3(a). Title VII permits "suits against employers, but not managers, directors, or other employees." Douglas v.

Quinn, 2010 WL 5161010, *3 (C.D. Ill. 2010), citing Williams v. Banning, 72 F.3d 552, 553-54 (7th Cir. 1995). To survive summary judgment, a plaintiff must demonstrate discrimination in one of two ways: the direct method or the burden-shifting indirect method. Gettis v. Illinois Dept. of Transp., 2011 WL 1232817, *4 (S.D. Ill. 2011).

    1.  Plaintiff's Race Discrimination Claim

To defeat summary judgment under the direct method, a plaintiff bringing a race discrimination claim must "present direct or circumstantial evidence that creates a 'convincing mosaic of discrimination' on the basis of race." Winsley v. Cook County, 563 F.3d 598, 604 (7th Cir. 2009), quoting Troupe v. May Dep't Stores Co., 20 F.3d 734, 737 (7th Cir. 1994). That circumstantial evidence "must point directly to a discriminatory reason for the employer's action" (Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003)) and be "directly related to the employment decision." Venturelli v. ARC Community Services, Inc., 350 F.3d 592, 602 (7th Cir. 2003) (quotation omitted).

Here, Plaintiff has not identified any evidence of a link between the Department's actions and Plaintiff's race. Even though Plaintiff is *pro se*, this Court is not required to "'scour the record looking for factual disputes.'" Greer v. Board of Education of City of Chicago, 267 F.3d 723, 727 (7th Cir. 2001), quoting Waldridge v. American Hoechst Corp., 24 F.3d 918, 921-22 (7th Cir. 1993).

Even examining the evidence in the record, the admissible evidence does not suggest that Plaintiff has direct or circumstantial evidence that the Department's actions were based on Plaintiff's race. Essentially, Plaintiff relies on his own belief that the Department discriminated against him on the basis of race. His own speculation is insufficient to establish a link between protected class or activity and the Department's treatment of him. See Winsley, 563 F.3d at 605 (finding that the plaintiff's own assertions that the County mistreated her on the basis of her race was insufficient to establish a link between her race and the County's treatment of her).

Nor does Plaintiff fare any better under the indirect method.

Under the indirect method, a plaintiff must establish a <u>prima facie</u> case of discrimination by presenting evidence that (1) he is a member of a protected class, (2) his job performance was meeting the employer's legitimate expectations, (3) he was subject to a materially adverse employment action, and (4) the employer treated similarly situated employees outside the protected class more favorable. The third prong may not apply, however, because Plaintiff asserts he was singled out for discipline based on his race. "[W]here the issue is whether the plaintiff was singled out for discipline based on a prohibited factor, it 'makes little sense ... to discuss whether she was meeting her employer's reasonable expectations.'" <u>Curry v. Menard, Inc.</u>, 270 F.3d 473, 477 (7th Cir. 2001) (quoting <u>Flores v. Preferred Technical Group</u>, 182 F. 3d 512, 515 (7th Cir. 1999).

Nonetheless, Plaintiff cannot make a <u>prima facie</u> case of discrimination on the basis of race. Plaintiff has not pointed to any similarly situated individual who was treated more favorably. As stated in <u>Luster v. Illinois Department of Corrections</u>, ___ F.3d ___, ___, 2011

WL 2857262, *3 (7th Cir. 2011):

> A plaintiff trying to meet this element by showing that comparators outside the protected group were 'similarly situated' need not demonstrate complete identity. What is required is 'substantial similarity' given all relevant factors in the case. [Citation.] Courts should apply a flexible and factual, common-sense approach. [Citation.] The question is whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis. For claims of discriminatory discipline, courts compare similarity of misconduct, performance standards, qualifications, and disciplining supervisor. [Citation.]"

Plaintiff testified that "Goddard," a Caucasian: (1) got into a fight outside the Facility but was not disciplined; and (2) was brought up on charges for sexually assaulting a female on state grounds but was not fired or disciplined. However, the misconduct is not similar, nor has Plaintiff shown that the same disciplining supervisor was involved with both Plaintiff and Goddard.

Plaintiff also testified that a Caucasian employee who brought cigarettes into the facility was allowed to resign. However, Plaintiff was

never disciplined for allegedly bringing drugs into the Facility and an investigation does not generally constitute an adverse employment action. <u>See</u>, <u>e.g.</u>, <u>Glapion v. CSX Transp. Inc.</u>, 2010 WL 489702, *5 (N.D. Ill. 2010) (an investigation was not a materially adverse employment action).

Plaintiff testified, regarding the March 6, 2008, incident, that the call log would reflect a number of Caucasians who did not come in for shifts but were not disciplined. However, he did not provide any names, and admitted he did not have the names of any Caucasians who did the exact same thing and did not get disciplined. Because Plaintiff cannot identify a similarly situated person, he cannot make a <u>prima</u> <u>facie</u> case of discrimination based on his race. <u>See</u>, <u>e.g.</u>, <u>Mokry v. Partylite Worldwide, Inc.</u>, 2009 WL 2588888, *14 (N.D. Ill. 2009) (the plaintiff failed to establish a <u>prima</u> <u>facie</u> case of discrimination where she failed to identify a similarly situated employee outside of her protected class who received more favorable treatment).

Even if Plaintiff had presented a <u>prima</u> <u>facie</u> case of discrimination,

the Department has offered legitimate, nondiscriminatory reasons for

disciplining and ultimately terminating Plaintiff.  The Department

maintains that the discipline was imposed and the discharge occurred

because the charges were substantiated and Plaintiff violated the rules.

This is a legitimate, nondiscriminatory reason for imposing the discipline.

Luster, __ F.3d at ___, 2011 WL 2857262 at *4 (finding the defendant

provided a legitimate, nondiscriminatory reason for its adverse

employment action–that the defendant sexually harassed a coworker and

lied about it).

Because the Department provided a legitimate, nondiscriminatory

reason for its action, Plaintiff has the burden–for purposes of defeating

summary judgment–"of presenting evidence sufficient to allow a

reasonable jury to find that this reason was false (pretextual), from which

a trier of fact could infer that the real reason was unlawful

discrimination."  Id.

To demonstrate a material issue of fact as to pretext, a plaintiff

must show that either (1) it is more likely that a discriminatory reason

motivated the employer than the proffered non-discriminatory reason, or (2) the employer's explanation is not credible. Guerrero v. Ashcroft, 253 F.3d 309, 313 (7th Cir.2001). That is, Plaintiff must either show the Department lied about the reasons for its actions or that the Department's reasons have no basis in fact. Guerrero, 253 F.3d at 313.

Plaintiff alleges the majority of incident reports were false, but he has offered no evidence that the reports were false. See Gonzalez v. Cook County Bureau of Administration, 450 F.Supp. 2d 858, 868 (N.D. Ill. 2006) (noting the plaintiff "alleges without support that [his supervisor] gave false testimony at his pre-termination hearing but has no evidence that this testimony was false"). Plaintiff even admitted he committed some of the infractions he was accused of, including violating the administrative and facility directives on February 4, 2008, when he requested a work-away day and failing to report for an overtime shift on March 6, 2008. Both of those infractions resulted in a 30-day suspension pending discharge.

Plaintiff also alleged that the BCA, after investigating Plaintiff's

complaint, determined that discrimination and retaliation occurred.

Plaintiff's only "evidence" of this are two letters from the BCA stating:

> After a careful review of the documents provided by you as well as interviews and documents obtained during the investigation, it has been determined that sufficient information exists to support your complaint.
>
> The Bureau of Civil Affairs is therefore concluding its investigation of this matter." (May 22, 2007 Letter)
>
> Based on the information obtained, it has been determined that there is sufficient evidence of retaliation or harassment as alleged on some of the issues in your charge. Recommendations have been forwarded to Administration as is appropriate." (December 10, 2007, Letter)

The BCA's conclusions have no probative value in this Court's analysis.

See Silverman v. Board of Educ. of the City of Chicago, 637 F.3d 729, 732 (7th Cir. 2011) (finding the district court did not abuse its discretion by determining that the Equal Employment Opportunity Commission determination was not probative to the court's analysis). This court cannot evaluate the weight the BCA determination deserves without knowing the evidence presented to the BCA or whether the evidence

would be properly admissible in court.  Id.

Plaintiff testified that Defendant Hankins–on some date not identified in the record–made what Plaintiff claims was a racial comment to another African American employee: "I didn't know that important phone calls came from taxicabs."  How this is a racial comment suggestive of prejudice is not apparent.  In any event, "[i]solated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." Hemsworth v. Quotesmith.Com, Inc.,  476 F.3d 487, 491 (7th Cir. 2007) (a remark can provide an inference of discrimination if made by a decision maker, around the time of the decision, and in reference to an adverse employment action).

Finally, Plaintiff testified that Defendant Kurfman told Plaintiff that Plaintiff was right about African Americans being mistreated and that Defendant Kurfman admitted sending a few people "over there after Plaintiff."  Even assuming Defendant Kurfman stated that African Americans were mistreated, Defendant Kurfman did not state that

Plaintiff himself was mistreated.  Moreover, Defendant Kurfman's purported admission that he sent a few people "over there after Plaintiff"–apparently a reference to Plaintiff being investigated–does not support Plaintiff's claim because an investigation is not generally a adverse employment action.  See Glapion, 2010 WL 489702, at *2.

Plaintiff has failed to present evidence sufficient to allow a reasonable jury to find that the Department's reasons for its actions were pretextual.

2.  Plaintiff's Title VII Retaliation Claim

To make out a case of Title VII retaliation under the direct method, a plaintiff must show three things to survive summary judgment: (1) that he engaged in an activity protected by Title VII;   (2) he suffered a materially adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. Davis v. Time Warner Cable of Southeastern Wisc., L.P., __ F.3d __, 2011 WL 2611303, *8 (7th Cir. 2011); Leonard v. Eastern Illinois University, 606 F.3d 428, 431 (7th Cir. 2010).  In a retaliation case, an

adverse action is "one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." Roney v. Illinois Dept. of Transp., 474 F.3d 455, 461 (7th Cir. 2007); see, e.g. Silverman,  637 F.3d at 741 (negative performance evaluation could constitute an adverse action within the meaning of the direct method of proving retaliation).  An adverse employment action in the Title VII  retaliation context is broader than in the Title VII discrimination context.  Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 64, 67 (2006) (the "antiretaliation provision [of Title VII], unlike the substantive [antidiscrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment").

Here, Plaintiff cannot defeat summary judgment under the direct method because he does not point to evidence of a causal connection between the protected activity and the adverse employment actions. See, e.g., Silverman, 637 F.3d at 741 (finding the plaintiff failed to offer evidence that the evaluations were causally linked to her EEOC charge).

Under the indirect method, a plaintiff must demonstrate (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) he met the employer's legitimate expectations, and (4) he was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. Silverman, 637 F.3d at 742. If the plaintiff establishes these elements, the burden shifts to the employer to produce a legitimate, non-retaliatory reason for it's actions. Id. If the employer does so, the plaintiff must come forward with evidence that the employer's proffered reasons were only a pretext for retaliation. Id.

Plaintiff has not demonstrated a prima facie case because he did not demonstrate that he was treated less favorably than similarly situated employees who did not engage in the protected activity. See Hudson v. Chicago Transit Authority, 375 F.3d 552, 560-61 (7th Cir. 2004) (the plaintiff failed to point to any evidence in the record to demonstrate that he was singled out and that other similarly situated employees who did not file a charge of discrimination against the CTA were treated more

favorably).

Moreover, the Department has offered a legitimate, non-retaliatory reason for its actions. For the same reasons noted above regarding Plaintiff's discrimination claim, Plaintiff has not presented evidence suggesting that the Department's actions were pretext for retaliation.

For all these reasons, the Department's Motion for Summary Judgment on Count I will be granted.

## B.    Count III: § 1983 Retaliation Claim Against the Individual Defendants

In Count III, Plaintiff alleged the Individual Defendants retaliated against him for exercising his First Amendment rights by speaking out on racial issues in the Department. "Liability under § 1983 must be premised on personal involvement in the deprivation of the constitutional right, not vicarious liability." Payne for Hicks v. Churchich, 161 F.3d 1030, 1042 n. 15 (7th Cir. 1998); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an

alleged constitutional deprivation") (emphasis in original). However, a defendant need not directly participate in the violation if: (1) he "acts or fails to act with a deliberate and reckless disregard of [the] plaintiff's constitutional rights"; or (2) "the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); see also Patterson v. Burns, 670 F.Supp.2d 837, 849 (S.D. Ind. 2009).

A claim for First Amendment retaliation under § 1983 involves a three-step inquiry: (1) whether the employee's speech was constitutionally protected; (2) whether the protected speech was a but-for cause of the employer's action; and (3) whether the employee suffered a deprivation because of the employer's action. Kodish v. Oakbrook Terrace Fire Protection Dist., 604 F.3d 490, 501 (7th Cir. 2010), (noting the United State "Supreme Court recently clarified that unless a federal statute provides otherwise, the plaintiff bears the burden of demonstrating but-for causation in suits brought under federal law"), citing Gross v. FBL Fin. Serv., Inc., 129 S. Ct. 2343, 2351 (2009). The

Seventh Circuit has also held that whether the indirect, burden shifting analysis continues to apply in non-Title VII cases "remains to be seen." Kodish, 604 F.3d at 501; see also Zitzka v. Village of Westmont, 743 F.Supp.2d 887, 915   n. 11 (N.D. Ill. 2010) (questioning whether burden shifting analysis remains; to make out a prima facie case of but for causation would require the same evidence to show pretext under the indirect, burden shifting method); Davis v. Harris, 2006 WL 3321630, *26 (C.D. Ill. 2006) ("First Amendment retaliation cannot be established by the indirect method").

　　　If the plaintiff makes out the prima facie case of First Amendment retaliation, the burden shifts to the defendant to show that the same decision would have been made in the absence of the protected speech. Zellner v. Herrick, 639 F.3d 371, 378-79 (7th Cir. 2011).  If the defendant does so, the plaintiff must then demonstrate that the proffered reasons are pretextual.  Id.   "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie."  Id.

The Individual Defendants do not challenge, for purposes of summary judgment, whether Plaintiff's speech was constitutionally protected. See, e.g., Garcetti v. Ceballos, 547 U.S. 410, 417 (2006) (finding the "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern"); Bivens v. Trent, 591 F.3d 555, 560 (7th Cir. 2010) (to prevail on a First Amendment retaliation claim, a public employee must have spoken as a citizen–not as a public employee–and demonstrate that this speech addressed a matter of public concern). Therefore, this Court assumes, for purposes of the Motion, that Plaintiff's filing of the BCA complaints was constitutionally protected activity. This Court addresses only the issues raised by the Individual Defendants: (1) whether a causal connection exists for actions taken prior to the alleged protected activity; (2) whether certain Individual Defendants are entitled to summary judgment because they did not take any materially adverse action against Plaintiff after the filing of the first BCA complaint; and (3) Plaintiff can show that, but for his protected speech, the remaining Individual

Defendants would have taken action against him or that any other employees who did not engage in the protected activity were treated better.

1.    Defendants Howard and Jacobson

Plaintiff admitted in both his deposition and his Response to the Statement of Undisputed Facts that Defendants Howard and Jacobson could be dismissed from the Amended Complaint.  Therefore, summary judgment will be granted in favor of Defendants Howard and Jacobson and they will be dismissed from the case.

2.    Actions Occurring Prior to the January 2007 Filing of the BCA Complaint

Plaintiff alleged he suffered certain adverse employment actions that preceded the filing of the BCA complaint: the June 2006 denial of a promotion; the September 16, 2006, incident; the October 2006[6]

---

[6]Because the record is unclear whether this occurred in October 2006 or September 2007, or both, this Court will consider both dates.

counseling for the misuse of sick time; the November 2006, incident; the November 24, 2006, incident; and the December 24, 2006, incident. Because those actions preceded the January 2007 BCA complaint, those actions could not have been motivated by Plaintiff's alleged protected speech. Accordingly, Plaintiff cannot sustain a retaliation claim based on those events.

Plaintiff admitted Defendant Jeslis was only sued for his role in the November 2006 perimeter patrol issue. That act preceded Plaintiff's January 2007 BCA complaint. Therefore, Defendant Jeslis is entitled to summary judgment because Plaintiff cannot show causation. See, e.g., Wackett v. City of Beaver Dam, Wis., 642 F.3d 578, 582 (7th Cir. 2011 (finding the plaintiff could not show causation because he could not show that any of the defendants knew of his purportedly protected speech).

### 3. Materially Adverse Employment Actions

Defendant Volk claims she is entitled to summary judgment because the only action alleged against her that followed the filing of the

January 2007 BCA complaint was a September 2007 oral counseling for misuse of sick time.  Volk claims, without citation to any authority, that the counseling is not a materially adverse employment action.

Defendant McAdory also seeks summary judgment on the basis that the acts he is alleged to have taken do not constitute materially adverse employment actions.  Plaintiff alleged that McAdory: (1) failed to get him his Security Therapy Aide II uniform; and (2) was somehow involved in Defendant's Clayton's investigation of Plaintiff for bringing drugs into the facility.

In the First Amendment retaliation context,"the plaintiff must show a retaliatory act that would dissuade a reasonable person from opposing discrimination or filing a discrimination complaint."  Davis v. Harris, 2006 WL 3321630, *25  (C.D. Ill. 2006) (finding an issue of fact whether a written reprimand was sufficient to constitute a retaliatory act).  "[A] § 1983 case does not require an adverse employment action within the meaning of the antidiscrimination statutes, such as Title VII." Spiegla v. Hull, 371 F.3d 928, 941 (7th Cir. 2004) (involving First

Amendment retaliation claim).

The Individual Defendants cite no authority in support of their contention that the September 2007 oral reprimand would not dissuade a reasonable person from opposing discrimination. Therefore, this Court will not grant summary judgment on this basis.

4. Remaining Individual Defendants

Defendants argue that the remaining Individual Defendants are entitled to summary judgment because Plaintiff cannot show that but for his protected speech, they would have taken any action against him and cannot show that other employees who did not engage in the protected activity were treated better. Defendants specifically address the Fall 2006 probationary promotion; the February 4, 2008, incident; the February 7, 2008, incident; the March 6, 2008, incident; and the investigation involving drugs.

Plaintiff has not presented any evidence that, but for his filing of the BCA complaint, the Individual Defendants would not have taken the actions against him. Moreover, even if Plaintiff could make out a prima

<u>facie</u> case, the Individual Defendants have provided evidence that the same decisions would have been made absent Plaintiff's protected speech. For the reasons cited above with regard to the Department, Plaintiff has failed to produce evidence upon which a rational finder of fact could infer that the Individual Defendant's proffered reasons are a lie.  <u>Zellner</u>, 639 F.3d at 379.

For all these reasons, the Individual Defendants' Motion for Summary Judgment on Count III will be granted.

## C.     Count V: Equal Protection Claim

In Count V of the Amended Complaint, Plaintiff alleges that Defendants Scott, Williams, and Clayton violated Plaintiff's right to equal protection.   Defendants Scott, Williams, and Clayton assert they are entitled to summary judgment because Plaintiff has not identified a similarly situated person, let alone a person not of his protected class who was treated more favorably.  Defendants Scott, Williams, and Clayton assert that to the extent Plaintiff alleges any retaliation violates his rights under the Equal Protection Clause, he cannot maintain that claim.  Such

a position is supported by <u>Boyd v. Illinois State Police</u>, 384 F.3d 888, 898 (7th Cir. 2004) (right to be free from retaliation may not be vindicated under the Equal Protection Clause).

The Fourteenth Amendment's Equal Protection Clause grants all Americans "a right to be free from invidious discrimination in statutory classifications and other governmental activity." <u>Harris v. McRae</u>, 448 U.S. 297, 322 (1980). A violation of this constitutional right allows an aggrieved party to seek redress pursuant to § 1983. <u>See</u> <u>Nabozny v. Podlesny</u>, 92 F.3d 446, 453 (7th Cir. 1996).

To state a <u>prima</u> <u>facie</u> case under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must establish that he: (1) is a member of a protected class; (2) is otherwise similarly situated to members of the unprotected class; (3) suffered an adverse employment action; (4) was treated differently from members of the unprotected class; and (5) the defendants acted with discriminatory intent. <u>McPhaul v. Board of Com'rs of Madison County</u>, 226 F.3d 558, 564 (7th Cir. 2000); <u>see also</u>, <u>Pirela v. Village of North Aurora</u>, 966 F.Supp. 661, 667 (N.D.

Ill. 1997) (discrimination must be based on his membership to a particular class and not an individual basis).

Plaintiff alleged that Scott, Williams, and Clayton attempted to persuade residents of the Facility to get Plaintiff to commit unlawful acts so as to subject Plaintiff to criminal charges and prosecution. Plaintiff further alleged that similarly situated Caucasian employees have never been subject to such action.

However, Plaintiff has not pointed to any similarly situated Caucasian employee who was treated differently. See Chavez v. Illinois State Police, 27 F.Supp.2d 1053, 1066 (N.D. Ill. 1998) (granting summary judgment where the plaintiff could not point to a similarly situated individual of a different race who was treated differently).

Defendants Scott, Williams, and Clayton are entitled to summary judgment on Count V.

## D. Count VI: Intentional Infliction of Emotional Distress Against the Individual Defendants

In Count VI, Plaintiff alleges the Individual Defendants committed

the acts that made up the other claims with the intent to inflict severe emotional distress on Plaintiff. To prove a claim for the intentional infliction of emotional distress, Plaintiff must establish that: (1) the Individual Defendant's conduct was extreme and outrageous; (2) the Individual Defendants intended to inflict severe emotional distress or new there as a high probability their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. See McGrath v. Fahey, 126 Ill. 2d 78, 86 (1988). The emotional distress required to support the cause of action must be "so severe that no reasonable person could be expected to endure it." Adams, 292 Ill.App.3d at 39.

The Individual Defendants assert that they are entitled to summary judgment on Count VI because Plaintiff cannot demonstrate the Individual Defendants caused Plaintiff severe emotional distress. Specifically, the Individual Defendants claim that (1) Plaintiff made no allegations that the conduct caused Plaintiff any distress at all; and (2) Plaintiff admits his only damages are that he is blind, and that this was

caused by the inability to get his cataracts removed because he had no insurance.

"Absent proof that the emotional distress suffered by the plaintiff was so severe so as to exceed all bounds of human decency, the stringent test established for this tort has not been satisfied." Adams v. Sussman & Hertzberg, Ltd., 292 Ill.App.3d 30, 39 (1997); see also Johnson v. Kmart Corp., 311 Ill.App.3d 573, 580-81 (2000) (summary judgment granted where no factual issue existed regarding the severity of the emotional distress suffered by the plaintiffs). By his own admission, the only damage Plaintiff suffered was physical damage to his eyes that resulted from his inability to get medical care. Plaintiff has not pointed to any other evidence of damages–emotional or otherwise–resulting from the alleged conduct by the Individual Defendants. Because no genuine issue of material fact exists regarding an element of the claim, the Individual Defendants are entitled to summary judgment on Count VI.

E.      Count VII:  Gross Negligence Claim Against Clayton and Sanders

In Count VII, Plaintiff alleged that Defendants Clayton and

Sanders, in their individual capacities, had a duty to prevent discrimination due to a nondiscrimination policy in the collective bargaining agreement between the union and CMS.  Plaintiff alleged Defendants Clayton and Sanders breached that duty be failing to intervene or prevent Plaintiff and other African American employees from being subject to a discriminatory work environment.  In his deposition, Plaintiff stated his gross negligence claim was based on Defendant Clayton and Sanders' failure to take any action to resolve the issues inside the facility and contributed to the issues.

Defendants Clayton and Sanders argue that sovereign immunity bars Plaintiff's claim from being heard in this Court.  Specifically, Defendants Clayton and Sanders assert that this claim against them is in fact a suit against the State.

The State of Illinois cannot be made a defendant party to a lawsuit in any court except as provided in the Court of Claims Act (705 ILCS 505/1 et seq. (West 2008).  745 ILCS 5/1 (West 2008); Jackson v. Alverez, 358 Ill. App. 3d 555, 559 (2005) (noting the General Assembly

reinstated sovereign immunity in the Court of Claims Act); <u>Benning v.</u>

<u>Board of Regents of Regency University</u>, 928 F.2d 775, 778-79 (7th Cir.

1991) (state immunity rules apply in federal court). The Court of Claims

has exclusive jurisdiction to hear certain matters, including "[a]ll claims

against the State for damages in cases sounding in tort, if a like cause of

action would lie against a private person or corporation in a civil suit."

705 ILCS 505/8(d).

The applicability of sovereign immunity does not depend on the

formal designation of the defendants in the action but on the nature of

the State employee's conduct and the relief the plaintiff seeks. <u>Jackson</u>,

358 Ill. App. 3d at 560; <u>Janes v. Albergo</u>, 254 Ill. App. 3d 951, 956

(1993). Specifically, an action brought against a State employee in his

individual capacity is viewed as having been brought against the State

where: (1) there are no allegations that a state employee acted beyond

the scope of his authority through wrongful acts; (2) the employee did

not allegedly breach a duty owed to the public generally independent of

his state employment; and (3) the complained of actions involve matters

ordinarily within the employee's normal and official functions with the State.  Healy v. Vaupel, 133 Ill.2d 295, 309 (1990); Jinkins v. Lee, 209 Ill.2d 320, 330 (2004).  In addition, an action brought against a State employee in his individual capacity will be considered an action against the State where a judgment in favor of the plaintiff could operate to control the actions of the State or subject it to liability.   Currie v. Lao, 148 Ill. 2d 151, 158 (1992).

The first and third prong overlap, and both are met here.  See Jackson, 358 Ill. App. 3d at 560 (first and third prong relating to scope of authority and duties as a State employee overlap).  "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful manner, but sticking his nose in business where it doesn't belong."  Turpin v. Koropchak, 567 F.3d 880, 883 (7th Cir. 2009)(emphasis in original).

Here, Plaintiff essentially alleged that Defendants Clayton and Sanders failed to do anything about the alleged disparate treatment of Plaintiff or other African American employees.  The treatment of which

Plaintiff complained-- failure to get a uniform, the disciplined imposed, the failure to be promoted--and Defendants Clayton's and Sanders' response thereto all related to functions within the scope of their authority.  See, e.g., Janes, 254 Ill. App. 3d at 959 (employees who were alleged to have engaged in wilful and wanton conduct and violated hospital policy did not exceed the scope of their authority where they acted in furtherance of their employer's purposes)  Healy, 133 Ill. 2d at 311 (allegation that the university employees negligently performed their duties was not a claim that the defendants acted in violation of law or in excess of their authority).  In addition, the complained of actions involved matters ordinarily within the duties of Defendants Clayton and Sanders as State employees.  Jackson, 358 Ill. App. 3d 561 (third prong met where the complained of actions involved matters ordinarily within the State employee's duties).

The second prong is also met.  For the second prong, the question "is whether the defendant breached a duty owed by all citizens, or whether he breached a duty held uniquely by State employees holding

the job at issue." <u>Turpin</u>, 567 F.3d at 883. Here, the duty alleged by Plaintiff– a duty to prevent or intervene regarding alleged disparate treatment based on an anti-discrimination policy in the collective bargaining agreement– is a duty owed only because of Defendants Clayton's and Sanders' employment with the State. <u>See</u> <u>Cortright v. Doyle</u>, 386 Ill. App. 3d 895, 903-05 (2008) (finding the duty alleged to have been breached–the responsibility to prepare performance valuations, impose discipline, and set deadlines–was not a duty owed independent of their state employment, noting, "[s]upervisors are hired to supervise" and "[t]heir alleged conduct, no matter how misguided, was work-related and unique to their capacity as supervisors").

Therefore, the claim against Defendants Clayton and Sanders is actually a claim against the State, which must be brought in the Court of Claims. Therefore, the claims against Defendants Clayton and Sanders in Count VII are dismissed for lack of jurisdiction.

## VII. CONCLUSION

For the reasons stated, the Department Defendants' Motion for

Summary Judgment (d/e 107) is GRANTED:

(1)    The Department's Motion for Summary Judgment on Count I of the First Amended Complaint is GRANTED;

(2)    The Individual Defendants' Motion for Summary Judgment on Counts III and VI is GRANTED;

(3)    Summary judgment is GRANTED in favor of the Defendants Gregg Scott, Tarry Williams, and Chris Clayton on Count V of the First Amended Complaint; and

(4)    The claims asserted against Defendants Chris Clayton and Darrell Sanders in Count VII of the First Amended Complaint are DISMISSED for lack of subject matter jurisdiction.

ENTERED: August 1, 2011

FOR THE COURT:

                          s/Sue E. Myerscough
                          SUE E. MYERSCOUGH
                    UNITED STATES DISTRICT JUDGE